# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| WILLIAM F. FELLER,<br><br>    Plaintiff,<br><br>v.<br><br>ROBIN J. FELLER,<br>HOLLY ENGLISH, *in her official and individual capacities*,<br>ERIC BROOKS, *in his official and individual capacities*,<br>JOANNE BARNES, *in her official and individual capacities*, and<br>DOES 1–25,<br><br>    Defendants. | Civil Action No. TDC-18-0108 |

## MEMORANDUM OPINION

Plaintiff William F. Feller ("Mr. Feller") has filed suit against Defendant Robin J. Feller ("Ms. Feller") and Defendants Holly English, Eric Brooks, and Joanne Barnes, all of whom are or were employed by the Montgomery County Department of Health and Human Services ("DHHS") in Montgomery County, Maryland to provide child welfare services (collectively, "the DHHS Defendants"), based on their involvement in a January 2015 child welfare investigation and subsequent emergency alteration to Mr. and Ms. Feller's child custody agreement. Ms. Feller and the DHHS Defendants have each filed a Motion to Dismiss, both of which are opposed by Mr. Feller. The Court has reviewed the Complaint and the briefs and finds no hearing necessary. D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motions to Dismiss will be GRANTED.

**BACKGROUND**

William Feller and Robin Feller were married in 2002 and had two children before their divorce in 2011. As part of that divorce, the Fellers entered into a Custody and Parenting Agreement on April 27, 2010, which was approved by the divorce court in March 2011.

On Saturday, January 10, 2015, Ms. Feller received a call from one of her children asking to be picked up from Mr. Feller's home, where the children were spending the weekend, because, according to Ms. Feller, he said that his father had thrown him into a wall and slammed his head against a wall. In response, Ms. Feller called 911. Police officers were dispatched to Mr. Feller's home, where they observed that the child in question had superficial scratches on his arm. Officers took statements from the child and Mr. Feller, but after the child and his brother stated that they felt safe staying with their father for the remainder of the weekend, the officers took no additional action at the scene. The resulting police incident report was later forwarded to DHHS. On Tuesday, January 13, 2015, the child was seen by his doctor and his school counselor, both of whom also contacted DHHS.

On January 14, 2015, in response to the reports, Holly English, a DHHS social worker, met with Ms. Feller to develop a Maryland Child Welfare Services Safety Plan ("the Safety Plan"). The Safety Plan required Ms. Feller to retain custody of the children over the coming weekend, to supervise any phone contact between the children and Mr. Feller, and to not return the children to Mr. Feller's custody until Mr. Feller had met with English. The Plan also required that Mr. Feller not have any physical contact with the children.

On Thursday, January 15, 2015, Ms. Feller filed an Emergency Motion to Modify Custody ("the Emergency Motion") in the Circuit Court for Montgomery County, asking to be granted immediate legal and physical custody of the children. Attached to the Emergency Motion was an

Affidavit signed by Ms. Feller stating that Mr. Feller had not been notified of the filing of the motion because DHHS requested that it be permitted to notify him of the filing so as to prevent any resulting violent reaction.

A hearing on the Emergency Motion was held that same day. Ms. Feller was the sole witness and testified that she filed the Emergency Motion at the request of DHHS, which did not want the children returned to Mr. Feller's custody while the investigation was pending. As to the allegations of abuse, she reiterated the child's report that on January 10, 2015, Mr. Feller had slammed him into a wall and pushed his head against a wall. She also stated that the child had later reported to his doctor and DHHS that his father had choked him during the incident. She testified that the children had made prior allegations of their father choking and suffocating them as punishment.

After hearing Ms. Feller's testimony and reviewing the submitted materials, the court found that Ms. Feller had established the existence of an emergency, such that a new custody order giving Ms. Feller immediate legal and physical custody of the children was warranted. However, the court emphasized that the order was a temporary one because Mr. Feller had not yet had an opportunity to be heard. The resulting order, issued on January 15, 2015, was captioned "Temporary Custody Order" ("the Temporary Order") and expressly stated that Ms. Feller was awarded only "temporary legal and physical custody" of the children and that any visitation would be supervised pending a further order by the court. Temp. Custody Order, Compl. Ex. C, ECF No. 1-3. At approximately 4:00 p.m. that same day, DHHS notified Mr. Feller of the Temporary Order and directed him not to pick up the children the next day, Friday, January 16, 2015, as previously scheduled.

On January 22, 2015, Mr. Feller filed an Emergency Motion for Expedited Custody Hearing in which he asked the court for a hearing to revisit the Temporary Order. That motion was granted, and a hearing was set for February 10, 2015. However, on February 11, 2015, Mr. and Ms. Feller signed a Consent Custody Order that resolved the issue of temporary custody, pending further assessment and recommendation by an agreed-upon custody expert as to permanent custody arrangements. In a letter dated February 12, 2015, Mr. Feller was notified that DHHS had closed its investigation into the January 10, 2015 incident and had found the allegations of abuse to be unsubstantiated but not ruled out. Mr. and Ms. Feller filed a new permanent custody order in July 2015.

On January 11, 2018, Mr. Feller filed suit in this Court, asserting federal and state law claims based on the issuance of the Safety Plan and the temporary deprivation of custody. He pleads four causes of action: (1) a claim under 42 U.S.C. § 1983 ("§ 1983") that through the implementation of the Safety Plan, Defendants violated his right to be free of unreasonable seizures, under the Fourth and Fourteenth Amendments to the United States Constitution, and his right to due process of law, under the Fourteenth Amendment; (2) a state law claim for intentional infliction of emotional distress; (3) a state law claim for negligent infliction of emotional distress; (4) a § 1983 claim that through implementation of the Safety Plan, Defendants violated his right under the Fifth Amendment to the Constitution to due process of law. Mr. Feller attached to his Complaint a number of documents, including (1) the original 2010 Custody and Parenting Agreement; (2) Ms. Feller's January 15, 2015 Emergency Motion, to which was attached the Safety Plan; (3) the January 15, 2015 Temporary Custody Order granting the Emergency Motion; (4) the transcript of the January 15, 2015 emergency hearing; (5) the police report of the January

10, 2015 incident; and (6) the February 12, 2015 letter from DHHS to Mr. Feller informing him that the allegations based on the January 10, 2015 incident had been found unsubstantiated.

## DISCUSSION

Ms. Feller and the DHHS Defendants have each filed a Motion to Dismiss the Complaint. The DHHS Defendants seek dismissal of the Fourth and Fourteenth Amendment claims on the grounds that as state employees, they are immune from suit in their official capacities and have qualified immunity from suit in their individual capacities. They also assert that Mr. Feller has failed to state a valid claim under the Fourth Amendment or the Fourteenth Amendment; that the Fifth Amendment claim fails because they are state, not federal, employees; and that the state law claims must be dismissed for failure to provide proper notice under state law, based on state sovereign immunity, and for failure to state a plausible claim for relief. In her Motion, Ms. Feller asserts that the Court should dismiss Mr. Feller's constitutional claims against her because she is not a state actor subject to suit under § 1983, and that the Court should decline to exercise supplemental jurisdiction over the state law claims or should find that they are barred by *res judicata*. Mr. Feller opposes the Motions.

**I.     Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

5

allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Prior state court proceedings are matters of which a court may properly take judicial notice. *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Thus, the Court may consider both the documents attached to the Complaint and the documents attached to Ms. Feller's Motion, which consist of several of the 2015 filings in the underlying state court case.

## II. Official Capacity

The DHHS Defendants argue that Mr. Feller's constitutional claims against them in their official capacities must be dismissed because they are immune from suit on such claims under the Eleventh Amendment to the Constitution. The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment immunizes states, state agencies, state instrumentalities, and state officials sued in their official capacities from suit by private parties in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Bland v. Roberts*, 730 F.3d 368, 389-91 (4th Cir. 2013) (holding that federal court claims for damages against state officials in their official capacities are barred by the Eleventh Amendment).

Thus, the DHHS Defendants would be immune from the official capacity claims if they are employees of a state agency. Officially, the DHHS Defendants work for the Montgomery County Department of Health and Human Services, an agency of the Montgomery County government. However, in Montgomery County, employees engaged in child welfare services are considered state employees. Md. Code Ann., State Gov't § 12-101(a)(7) (West 2015) (defining "state personnel" to include "a Montgomery County employee who carries out State programs administered under Title 3, Subtitle 4 of the Human Services Article"); Md. Code Ann., Hum. Servs. § 3-402 (directing Montgomery County to administer State child welfare programs).

The State's designation of such DHHS personnel as state employees is not dispositive. Whether an entity is entitled to Eleventh Amendment immunity is a question of federal, not state, law. *Ram Ditta v. Md. Nat'l Capital Park and Planning Comm'n*, 822 F.2d 456, 459–60 (4th Cir. 1987). In *Ram Ditta*, the United States Court of Appeals for the Fourth Circuit set out several factors for this analysis. The first and most important factor is whether the state treasury would be responsible for paying the judgment. *Harter v. Vernon*, 101 F. 3d 334, 339 (4th Cir. 1996). Additional factors include whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local rather than statewide concerns, and how it is treated as a matter of state law. *Id.* at 457–58.

Here, beyond the fact that DHHS personnel are treated as state employees under state law, by statute, the State of Maryland is required to pay "any judgment awarded against Montgomery County or an employee of Montgomery County that arises out of an action commenced or prosecuted in a court of the United States relating to the administration and implementation of State programs described in this subtitle," which includes child welfare programs. Md. Code Ann., Hum. Servs. § 3-406(b)(1). This statutory requirement that the State pay any judgment awarded

7

against a DHHS employee is "generally determinative" of the question whether the DHHS Defendants are shielded by the Eleventh Amendment from suits against them in their official capacities. *Harter*, 101 F.3d at 339. Moreover, the State of Maryland provides funds to Montgomery County for the costs of administering State child welfare programs, including, "salaries, overhead, general liability coverage, workers' compensation, and employee benefits." Md. Code Ann., Hum. Servs. § 3-403(b)(1)(i). Such financial involvement in DHHS buttresses the conclusion that DHHS is shielded by Maryland's Eleventh Amendment immunity. This determination echoes conclusions made both by the Fourth Circuit and judges in this District that similar social service agencies were shielded by Eleventh Amendment immunity. *See Keller v. Prince George's Cty.*, 923 F.2d 30, 32 (4th Cir. 1991) (holding that the Prince George's County Department of Social Services was protected by Eleventh Amendment immunity in part because its employees "receive fringe benefits and paychecks from the state and perform their duties subject to state personnel policy"); *Lowery v. Prince George's Cty.*, 960 F. Supp. 952, 955 (D. Md. 1997) (same); *Studli v. Children and Youth Servs.*, No. 12-cv-1093, 2012 WL 5420322 at *4 (D. Md. Nov. 6, 2012) (holding that the plaintiff's claims against Child Protective Services of Cumberland and Grantsville, Maryland were barred by the Eleventh Amendment). Mr. Feller's official capacity § 1983 claims against the DHHS Defendants must thus be dismissed with prejudice.

### III. Unreasonable Seizure

Turning to Mr. Feller's claim under the Fourth and Fourteenth Amendments that he was subjected to an unreasonable seizure of his children through the Safety Plan, the Court finds that this claim fails for a lack of standing. The "rights assured by the Fourth Amendment are personal rights" which "may be enforced … only at the instance of one whose own protection was infringed

by the search and seizure." *Rakas v. Illinois*, 439 U.S. 128, 138 (1978). Children are not property. Thus, the right to be free from an unreasonable seizure of their persons belongs to the children themselves, not their parents. Accordingly, Mr. Feller, who is suing on his own behalf, has no standing to assert any Fourth Amendment claim for an unreasonable seizure that his children may have. *Id.* at 139. Mr. Feller's Fourth Amendment claim will be dismissed with prejudice.

## IV. Due Process

In Counts I and IV, Mr. Feller asserts due process claims under the Fifth and Fourteenth Amendments. Because the Fifth Amendment applies only to the federal government, *Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952), the DHHS Defendants are state officials, and these claims are otherwise comparable, the Court will dismiss the Fifth Amendment claim and consider the Fourteenth Amendment claim as addressing all due process concerns raised in the Complaint.

As to Mr. Feller's due process claim, he asserts that the DHHS Defendants' adoption and implementation of the Safety Plan, which deprived him of his previously scheduled custody periods with his children and required supervision of his phone contact with the children, violated his due process rights. The due process claim, construed liberally, also appears to assert that the DHHS Defendants' actions deprived Mr. Feller of notice and an opportunity to be heard prior to the issuance of the January 15, 2015 Temporary Custody Order, which effectively deprived him of his custody rights until the scheduled hearing on February 10, 2015, a hearing rendered unnecessary by the February 11, 2016 Consent Custody Order agreed to by Mr. and Mrs. Feller.

Mr. Feller's claim fails because the submitted materials establish that no due process rights were violated. To the extent that Mr. Feller is alleging that the very issuance of a Safety Plan violated his due process rights, the Fourth Circuit has made clear, in a case relating to the conduct

of a Maryland DHHS caseworker, that there is no "constitutional right to be free from child abuse investigations." *Hodge v. Jones*, 31 F. 3d 157, 164 (4th Cir. 1994). A parent's due process right in the event of a DHHS investigation and possible loss of custody is the right "to a hearing initiated by the State before he may be deprived of the custody of his child, and in an emergency a prompt hearing may ratify the state action." *Weller v. Dep't Soc. Svcs. for the City of Balt.*, 901 F.2d 387, 398 (4th Cir. 1990). "Due process does not mandate a prior hearing in cases where emergency action may be needed to protect a child." *Id.* at 393. Instead, the "constitutional requirements of a notice and an opportunity to be heard are not eliminated, but merely postponed." *Id.*

Under this standard, the fulsome record provided by Mr. Feller establishes that he received due process. The Safety Plan was put in place by DHHS on Wednesday, January 14, 2015 only after the children had returned to Ms. Feller, as scheduled, from their weekend stay with Mr. Feller, and its terms were effectively ratified by the state court on Thursday, January 15, 2015 during an emergency hearing, before Mr. Feller was ever even, as a practical matter, deprived of custody of his children. Mr. Feller makes no allegation to the contrary. Notably, the DHHS Defendants never actually took custody of the children; rather, they remained with Ms. Feller throughout the proceedings.

Although Mr. Feller argues that where the DHHS Defendants were tasked with notifying him of the emergency hearing, the lack of notice violated due process, the state court was fully aware that Mr. Feller had not been notified and nevertheless made an express finding that emergency action was needed to protect the children and limited the custody order to a temporary order subject to further proceedings. Where due process does not require advance notice of a custody determination made under emergency circumstances, Mr. Feller was notified of the results of the emergency hearing later the same day, the court scheduled a later opportunity to be heard

10

on whether the temporary custody order should become permanent, and Mr. Feller has not argued that the date of that hearing was insufficiently prompt, due process was satisfied. *See Weller*, 901 F.2d at 393, 398.

Even if there were a due process violation, the DHHS Defendants would be entitled to qualified immunity. When qualified immunity is asserted, the court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right; and (2) "whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). For qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See Henry*, 501 F.3d at 377. Courts may address the questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Even if the DHHS Defendants' initiation and development of the Safety Plan, or the failure to notify Mr. Feller in advance of the emergency hearing, could somehow be deemed to violate a constitutional right, the Court finds that it would not have been "clear to a reasonable officer that such "conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. Particularly where an *ex parte* emergency hearing is permitted when the court determines that the circumstances warrant it, the Court has identified no controlling authority establishing that the DHHS Defendants' actions violated clearly established law. Application of qualified immunity under federal law is therefore appropriate. *See Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (in applying qualified immunity, stating that "[a]bsent extraordinary circumstances … liability will not attach for executing the statutory duties one was appointed to perform"). Notably, such application is consistent with guiding principles of Maryland law, which expressly provides

that officials engaged in good faith investigations into child abuse are immune from civil liability that would otherwise result from such participation. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-620 (West 2011). Thus, because Mr. Feller has not stated a plausible due process claim and the DHHS Defendants are entitled to qualified immunity, the Court will dismiss Mr. Feller's due process claim.

## V. Ms. Feller

As to Mr. Feller's constitutional claims against Ms. Feller, which include allegations that she offered perjured testimony at the emergency hearing, they fail as a matter of law. Constitutional claims brought under § 1983 may be asserted only against individuals who act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Mr. Feller makes no allegation, and there is no basis to conclude, that Ms. Feller is a state official or was acting under color of state law. Thus, she is correct that she cannot be subject to suit under § 1983 for violations of the Fourth, Fifth, or Fourteenth Amendments. Such claims against Ms. Feller will therefore be dismissed with prejudice.

## VI. State Tort Claims

Mr. Feller has also asserted state law tort claims for intentional infliction of emotional distress and negligent infliction of emotional distress against all Defendants based on the issuance of the Safety Plan. Because these claims are state law torts, and all parties are Maryland citizens, they do not fall within the original jurisdiction of this Court. *See* 28 U.S.C. § 1331 (2018) (stating that federal district courts have original jurisdiction over civil actions arising under federal law); 28 U.S.C. § 1332 (stating that federal district courts have original jurisdiction over civil actions in

which, in relevant part, the parties are from different states). Accordingly, they may be heard only pursuant to the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

District courts may decline to exercise supplemental jurisdiction in certain circumstances, including when the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Here, the Court has dismissed all of Mr. Feller's federal claims, and where the remaining claims relate to matters of domestic relations, this Court has no compelling interest in their resolution. *See Hillman v. Maretta*, 569 U.S. 483, 490 (2013) ("The regulation of domestic relations is traditionally the domain of state law."). The Court thus declines to exert supplemental jurisdiction over Mr. Feller's state torts. Those claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Ms. Feller's Motion to Dismiss and the DHHS Defendants' Motion to Dismiss are GRANTED. Mr. Feller's § 1983 claims (Counts I and IV) will be DISMISSED WITH PREJUDICE. Mr. Feller's state law tort claims (Counts II and III) will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date: March 20, 2020

　　　　　　　/s/　　　　　　　
THEODORE D. CHUANG
United States District Judge